## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 29, 2020

Lyle W. Cayce
Clerk

No. 17-20661

DESHUN THOMAS,

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, JONES, and ENGELHARDT, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This court granted a certificate of appealability on habeas petitioner Deshun Thomas's claim that his trial counsel failed to subject the prosecution's case to meaningful adversarial testing in violation of *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984). Counsel was appointed for Thomas. After reviewing the parties' supplemental briefs, and finding no error in the federal district court's rejection of that claim, we affirm.

I.

In 2006, after a second jury trial, a Texas jury convicted Thomas of aggravated robbery and sentenced him to seventy-five years' imprisonment. During closing argument and sentencing, Thomas's trial counsel, Ken McLean,

No. 17-20661

acknowledged the strength of the prosecution's evidence and indicated that Thomas deserved a "substantial sentence." After his conviction and sentence were affirmed on direct appeal,[1] Thomas filed a *pro se* habeas petition in state court, asserting, *inter alia*, ineffective assistance of counsel based on McLean's statements during summation and sentencing. Thomas's petition cited to both *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) and *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984). The state district court denied Thomas relief in a reasoned opinion that tracked *Strickland* but did not expressly reference *Cronic*. The Texas Court of Criminal Appeals subsequently denied relief without written order, adopting the findings of the state district court.[2]

In 2014, Thomas filed the instant federal petition pursuant to 28 U.S.C. § 2254, asserting, *inter alia*, that McLean's statements at trial amounted to an abandonment of Thomas in violation of *Cronic*. Applying the deferential standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996, the federal district court denied Thomas relief. The court reasoned that *Strickland*, not *Cronic*, governed Thomas's claim, and that, under *Strickland*, Thomas failed to show McLean was constitutionally ineffective or that Thomas was otherwise prejudiced. In 2018, another panel of this court granted a certificate of appealability solely on Thomas's *Cronic*

---

[1] An intermediate Texas appellate court affirmed the judgment on direct appeal. In so doing, however, it held that Thomas's trial counsel's closing arguments were professionally incompetent in violation of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) because they essentially conceded his client's guilt, but appellate counsel had waived any showing, pursuant to the other *Strickland* prong, of prejudice to Thomas.

[2] That neither the state habeas court nor the TCCA addressed the state appellate court's holding regarding deficiency is rather odd, but since we exercise discretion to review Thomas's *Cronic* claim *de novo*, the discrepancy does not matter.

2

No. 17-20661

claim[3] and instructed the parties (after appointment of counsel for Thomas) to address whether that claim was exhausted and adjudicated in state court, and whether AEDPA applies.

## II.

Thomas contends he exhausted his *Cronic* claim, but the state habeas court failed to adjudicate the claim on the merits. Thus, according to Thomas, the federal district court should have reviewed the claim *de novo* rather than applying AEDPA deference. The State now concedes that Thomas exhausted his claim. We therefore consider that issue waived and turn to the standard of review question. *See* 28 U.S.C. § 2254(b)(3); *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) (finding waiver when the State admitted that the petitioner "ha[d] sufficiently exhausted his state remedies").

Under AEDPA, "we must defer to the state habeas court unless its decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Haynes v. Cain*, 298 F.3d 375, 379 (5th Cir. 2002) (en banc) (quoting 28 U.S.C. § 2254(d)(1)). But AEDPA only applies to claims that are "adjudicated on the merits" in the state habeas proceedings. *Johnson v. Williams*, 568 U.S. 289, 292, 133 S. Ct. 1088, 1091 (2013). If a claim is properly raised but is not adjudicated on the merits, we review the claim *de novo*. *See Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997).

Thomas argues the state habeas court failed to adjudicate his *Cronic* claim on the merits, thus triggering *de novo* review, because the court cast its decision in *Strickland* terms and failed to expressly reference the *Cronic* standard. We presume the claim was adjudicated on the merits. *See Johnson*,

---

[3] Thomas did not brief the prejudice prong of *Strickland* on his appeal to this court, and consequently, that issue was waived. In any event, prejudice could not be shown on the record before us.

3

No. 17-20661

568 U.S. at 301, 133 S. Ct. at 1096 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ."). Although we are not entirely convinced that Thomas has rebutted this presumption,[4] Thomas's *Cronic* claim fails even when reviewed *de novo*.[5]

"Ordinarily, to prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy *Strickland's* familiar two-part test." *Haynes*, 298 F.3d at 380 (citing *Strickland*, 466 U.S. at 700, 104 S. Ct. at 2071). The petitioner must show that (1) counsel's "representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068. *Cronic* created "a very limited exception to the application of *Strickland's* two-part test," whereby prejudice is presumed "in situations that 'are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified.'" *Haynes*, 298 F.3d at 380 (quoting *Cronic*, 466 U.S. at 658, 104 S. Ct at 2046). The Supreme Court has identified three such situations, one of which Thomas relies on here. *See Bell v. Cone*, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002). Specifically, prejudice is presumed when the "petitioner is represented by counsel at trial, but his or her counsel 'entirely

---

[4] The allegations underlying Thomas's relevant *Strickland* claim (that McLean conceded guilt during summation and argued for a substantial sentence) are identical to those underlying his *Cronic* claim. And the state habeas court's reason for denying the *Strickland* claim (that McLean's statements were strategic) explains why the court did not apply *Cronic*. *See Haynes*, 298 F.3d at 381 ("[S]trategic or tactical decisions are evaluated under *Strickland's* traditional two-pronged test for deficiency and prejudice."). Thus, while the state court could have expressly stated that "Thomas's *Cronic* claim fails for the same reason as his *Strickland* claim," that finding seems implicit in its decision.

[5] "Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies . . . ." *Berghuis v. Thompkins*, 560 U.S. 370, 390, 130 S. Ct. 2250, 2265 (2010).

No. 17-20661

fails to subject the prosecution's case to meaningful adversarial testing.'" *Haynes*, 298 F.3d at 380 (citing *Cronic*, 466 U.S. at 659, 104 S. Ct. at 2047).

Thomas argues he satisfies this exception based on McLean's statements during summation and sentencing. We disagree. As *Cronic* suggests—and we have stressed—prejudice is not presumed unless an attorney *entirely* fails to defend his client. *See Bell*, 535 U.S. at 695, 122 S. Ct. at 1851. Thus, in *Haynes,* this court distinguished between "counsel's failure to oppose the prosecution entirely" and counsel's failure to do so "at specific points during trial." 298 F.3d at 381. Prejudice is presumed only in the former scenario because "it is as if the defendant had no representation at all." *Id.* In the same vein, *Cronic* applies to concessions only when they result in a "complete abandonment of counsel"; that is, the attorney must concede "the only factual issues in dispute." *Id.* In contrast, particular strategic or tactical concessions, such as those made to garner credibility with the jury at sentencing or on more severe counts, are subject to *Strickland*. *Id.*

Here, McLean did not entirely fail to subject the prosecution's case to meaningful adversarial testing. As the district court detailed in its thorough opinion, McLean actively advocated on Thomas's behalf throughout trial. He moved to suppress evidence. He cross-examined the State's witnesses on their identification of Thomas as the culprit, ultimately impeaching several of them and prompting the arguably most critical witness to admit she lied to the police. He also cross-examined the detectives involved in the underlying investigation on their search and arrest of Thomas, as well as their subsequent handling of evidence.

Moreover, McLean did not abandon Thomas by conceding the only factual issues in dispute. Faced with overwhelming evidence of guilt, McLean described the evidence as "really strong," "substantial," "persuasive," and "pretty powerful" during his summation at the end of the guilt/innocence phase

of trial. But he also emphasized that the jury must look at the evidence and twice admonished them to acquit "if you have a reasonable doubt" about Thomas's guilt. McLean pressed on the jury the weaknesses in the prosecution's case, emphasized the high burden of proof, and pointed to several potential sources of reasonable doubt. When read in context, McLean's summation indicates that his comments were strategically made to maintain credibility with the jury.

McLean's sentencing arguments during the punishment phase confirm this strategy.[6] Testimony during sentencing established that Thomas had an extensive criminal history, including nine felony and misdemeanor convictions, three of them following this crime, and he was likely involved in drug trafficking. This crime had devastating effects on the victim, who died from complications caused by his wounds after testifying at the first trial. The victim had survived, cared for by his mother, for several years in constant pain, endured at least eight surgeries resulting from Thomas's actions, and ultimately succumbed to a morphine overdose. The prosecution was seeking a life sentence.

Once again, to maintain credibility, McLean acknowledged these facts and stated that he "would be a fool if [he] suggested" that Thomas did not "deserve[] a pretty substantial sentence" that was more than the minimum of fifteen years. McLean also successfully lodged objections during the prosecution's argument:

> [THE PROSECUTION]: Asking a jury for a life sentence is a big thing. And I recognize that. And it's a tough thing. It's a tough thing for any jury to do, but in this case, even you were looking at Deshun Thomas and saying, buddy, give me something, give me some

---

[6] McLean died after he tried this case and was never available for post-conviction inquiry into the defense.

No. 17-20661

reason why you don't serve the maximum punishment in this—

MCLEAN: Objection. That's a comment on his failure to testify.

THE COURT: Sustained.

[THE PROSECUTION]: Show us something—

THE COURT: Again, get away from that. They are under no obligation to do anything.

And throughout the punishment phase, he continued to contest search issues raised previously at trial and extensively cross-examined a police officer on a more recent search. Ultimately, McLean's strategy paid off: Thomas avoided a life sentence.

*Cronic* does not proscribe defense counsel's approach. *See* 466 U.S. at 656 n.19, 104 S. Ct. at 2045 n.19 ("Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade."). But more importantly, no Supreme Court case has applied *Cronic* to overturn a conviction solely because of counsel's alleged trial errors. In *Bell,* for instance, the Court contrasted *Strickland* and *Cronic,* noting that those cases had been decided on the same day and that *Cronic* applied only when counsel's failure to mount a meaningful defense was "complete." 535 U.S. at 697, 122 S. Ct. at 1851. Counsel's mere failure to oppose the prosecution's sentencing case "at specific points" did not satisfy *Cronic* because the difference between that case and *Strickland* was a "difference . . . not of degree but of kind." *Id.* Consequently, the Court held, counsel's "failure to adduce mitigating evidence and the waiver of closing argument"—during the sentencing stage of a capital case—"are plainly of the same ilk as other specific attorney errors we have held subject to *Strickland's* performance and prejudice components." *Id.* at 697–98 (collecting cases).

7

No. 17-20661

Likewise, in *Florida v. Nixon,* the Court reiterated that *Cronic* is "a narrow exception" to *Strickland.* 543 U.S. 175, 190, 125 S. Ct. 551, 562 (2004). The Court then observed that "just how infrequently" *Cronic* will apply was demonstrated in *Cronic* itself, where the Court refused to find such structural error based on a claim of prejudicially incompetent representation by an "inexperienced, underprepared attorney in a complex mail fraud trial." *Id.*[7]

Nevertheless, pointing to our *en banc* decision in *Haynes*, Thomas contends that *Cronic* applies because McLean's statements do not qualify as a "partial concession." In *Haynes*, we held *Cronic* inapplicable to an attorney's strategic concession to a lesser-included offense in a multi-count indictment. *See Haynes*, 298 F.3d at 382. In reaching that conclusion, we recognized that "those courts that have confronted situations in which defense counsel concedes the defendant's guilt for only lesser-included offenses have consistently found these partial concessions to be tactical decisions" and thus not subject to *Cronic. Id.* at 381.

Thomas attempts to distinguish this case from *Haynes* by arguing that he was facing one count, and McLean's concession was therefore "full and complete." As noted, however, McLean did not concede the only factual issues in dispute. In any event, *Haynes* was not so limited. "[T]he Supreme Court [has] held that even defense counsel's *full* concession of guilt is not necessarily an indication that 'counsel has entirely failed to function as the client's advocate . . . .'" *Barbee v. Davis*, 728 F. App'x 259, 264 (5th Cir. 2018) (emphasis added) (quoting *Nixon*, 543 U.S. at 189–91, 125 S. Ct. at 560). Indeed, we have stated that "counsel may make strategic decisions to

---

[7] The Supreme Court's more recent decision in *McCoy v. Louisiana,* 138 S. Ct. 1500 (2018) is not to the contrary. *McCoy* held that counsel violates the Sixth Amendment by conceding a client's guilt to the jury over the client's objections. No issue was raised here about Thomas's objecting to McLean's approach in his summation and sentencing arguments.

No. 17-20661

acknowledge the defendant's culpability and may even concede that the jury would be justified in imposing the death penalty, in order to establish credibility with the jury." *Carter v. Johnson*, 131 F.3d 452, 466 (5th Cir. 1997).

The common thread is strategy. McLean's statements did not amount to a "complete" failure to mount a defense. *Cronic* does not apply.

For the foregoing reasons, the judgment of the district court denying habeas relief is **AFFIRMED**.