**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-10924

JOHN MICHAEL LAMB,

                                                                                Petitioner-Appellant,

versus

GARY JOHNSON, Director, Texas Department of Criminal Justice,
Institutional Division,

                                                                                Appellee-Respondent.

Appeal from United States District Court
for the Northern District of Texas

June 23, 1999

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge.

   Petitioner John Michael Lamb, convicted of capital murder in Texas and sentenced to death,

requests from this Court a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(2).

For the reasons set forth below, we DENY the COA.

## FACTUAL & PROCEDURAL BACKGROUND

Lamb was convicted by a jury of capital murder and sentenced to death in 1983. The pertinent facts can be found in the substance of his confession contained in the state court opinion affirming his conviction:

Friday November 5, 1982[:] I got out of Jail in Searcy Arkansas about 10:30 a.m. I started hitchhiking toward Texas. I caught a ride into a town about 45 miles from Dallas on Interstate Highway 30 between Arkansas and Dallas, Texas. I walked across the Parking Lot of a motel I believe it was a Ramada Inn. I saw this guy in front of a motel room I talked to him a little bit then he went to eat. I stayed around the motel area for awhile. When this guy came back to his room after he had eaten and invited me in the room. We talked for about thirty minutes he was sitting on the bed and I was sitting on a chair nearby. This guy put his hand on my leg and I said take your hand off I don't go for that shit. I got up at this time and he said for me to leave. I had earlier gotten a gun from a bag in the room while this guy was in the bathroom. When I got up I took a step or two toward the door pulled the gun from my pocket and shot the guy three times I shot three times because the gun was an automatic after I shot the guy was on his knees on the bed and I heard him fall to the floor. I got the guys billfold off the nightstand and took a shaving kit. I got the keys to the guys car and drove his car toward Dallas. The car was a tan Nova with Virginia License Plates. The Drivers license and credit card in the billfold had the name of Jerry Chafin. The gun that I shot the guy with was a small automatic Pistol. I threw the gun out of the car somewhere between this town and Dallas. I slept a couple hours in the car in Dallas then drove to Houston. I drove to a Holiday Inn in Houston and checked into the Motel[.] Saturday November 6, 1982[:] I used Jerry Chafin credit card and Drivers License to check into the Holiday Inn. I threw a Television and some other stuff that was in the car into a Garbage bin at the Holiday Inn. I stayed in Houston until Monday then started East toward Louisiana. Tuesday I stopped at a Shamrock station in Lafyette Louisiana. I got some gas and two cases of Budweiser Beer Longnecks. I attempted to use Jerry Chafin credit card and a girl called in to check on the credit card. I took off without the card. I drove East on Interstate 10. Thursday Morning[:] I stopped at store and gas pumps in Greenville Florida. I shot the attendant and took two cases of Budweiser Beer and some money. A few minutes later I was stopped by the Police and arrested. When I was arrested I was driving the car that I got in Texas and had the billfold in my pocket with Jerry Chafin Drivers License of Jerry Chafin.

2

Lamb v. State, 680 S.W.2d 11, 14 (Tex. Crim. App. 1984) (*en banc*). His conviction and sentence were affirmed on direct appeal. See id. at 13-17. The United States Supreme Court denied Lamb's petition for a writ of certiorari. See Lamb v. Texas, 470 U.S. 1009 (1985).

Thereafter, Lamb filed several applications for a writ of habeas corpus under Texas law. On October 31, 1985, the trial court conducted an evidentiary hearing on the allegations raised in Lamb's first application. The trial court issued findings of fact and conclusions of law, and Lamb's application was denied on January 8, 1986. Lamb filed a motion for stay of execution and a second application for state habeas corpus in February 1986, both of which were also denied.

In February 1986, Lamb filed his first 28 U.S.C. § 2254 application in federal court. His application was initially denied, but the district court granted Lamb's motion to allow him to amend his application asserting additional grounds for relief. Lamb filed his first amended application, and on March 22, 1988, the magistrate judge conducted an evidentiary hearing. Lamb then filed a second amended application adding claims which had not been presented to the state court, and in May 1989, his § 2254 application was dismissed for failure to exhaust state remedies. As such, Lamb filed his third application for state habeas corpus in December 1989. The state trial court conducted an evidentiary hearing on July 30, 1996. The trial court issued findings and denied the application on April 22, 1997.

Lamb then filed the instant § 2254 petition on April 23, 1997. Lamb raised several claims in this petition. Relevantly, the fifth claim among these was that he was denied effective assistance of counsel when trial counsel failed to investigate and present mitigating evidence at the sentencing phase of the trial. The magistrate judge conducted a limited evidentiary hearing at which it adopted the previous evidentiary hearing conducted in 1988. The magistrate judge concluded that "Lamb's

3

attorneys' strategic decision to not put on mitigating evidence and, as a result, to not conduct much investigation into such evidence, was entirely reasonable in light of all the circumstances of the case." The magistrate judge further concluded that "there is not a reasonable probability that the result of the punishment phase would have been any different had counsel put on mitigation witnesses." Lamb subsequently objected, arguing that the magistrate judge's conclusion that the attorneys made a strategic decision did not coincide with the facts, and that some mitigating evidence would have provided a reasonable probability that a life sentence could have been obtained. The district court adopted the magistrate judge's report and denied Lamb's § 2254 application.

Pursuant to § 2253(c)(2), Lamb filed a request for a COA from the district court. After the court below denied this request, he made a similar request to this Court. We now consider this request.[1]

**DISCUSSION**

**I**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"), amending the procedures for seeking and obtaining a writ of habeas corpus from a federal court. Lamb filed his habeas application in the district court on April 23, 1997, after the effective date of AEDPA. AEDPA applies to those § 2254 applications filed in the district court after the Act's effective date. See Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997); Nobles v. Johnson, 127 F.3d 409, 412-13 (5th Cir. 1997), cert. denied, -- U.S.--, 118 S. Ct. 1845 (1998).

---

[1]Because Lamb raises Claim 5 only in his request for a COA and brief, all other issues are considered abandoned. See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).

Under AEDPA, a § 2254 applicant must obtain a COA. See 28 U.S.C. § 2253(c)(2). A COA may be issued only if the prisoner has made a substantial showing of the denial of a constitutional right. See id. A petitioner makes a "substantial showing" if he demonstrates that his petition involves issues which are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues are adequate enough to deserve encouragement to proceed further. See Drinkard v. Johnson, 97 F.3d 751, 755 (5th Cir. 1996).

"The nature of the penalty in a capital case is a `proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate.'" Washington v. Johnson, 90 F.3d 945, 949 (5th Cir. 1996) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In a capital case, "any doubts whether CPC [the predecessor to the COA] should be issued are to be resolved in favor of the petitioner." Buxton v. Collins, 925 F.2d 816, 819 (5th Cir. 1991).

Under 28 U.S.C. § 2254(d), as amended by AEDPA:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Pure questions of law are reviewed under the "contrary to" standard. See Drinkard, 97 F.3d at 767-68. On the other hand, mixed questions of law and facts are reviewed under the "unreasonable application" standard. "[A]n application of law to facts is unreasonable only when it can be said that reasonable jurists considering the question would be of one view that the state

5

court ruling was incorrect." Id. at 769. "In other words, [the court] can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Id. Finally, pure questions of fact are reviewed under the "unreasonable determination of the facts" standard. See id. at 767.

## II

Lamb submits that he was denied effective assistance of counsel because his trial counsel failed to investigate and present mitigating evidence at the sentencing phase of the trial. The ultimate determination of whether counsel was constitutionally effective is a mixed question of law and fact. See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997), cert. denied, 118 S. Ct. 1567 (1998). We review ineffective assistance of counsel claims under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. See Boyle v. Johnson, 93 F.3d 180, 187 (5th Cir. 1996). Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. See Carter, 131 F.3d at 463.

## A

At the punishment portion of the trial, Lamb's attorneys did not offer mitigating evidence in the form of family and friends coming to ask the jury to spare his life. Instead, his attorneys chose to make this plea through jury argument.[2] In his petition for a writ of habeas corpus, Lamb argues

---

[2]At the punishment phase, the state attempted to introduce evidence of Lamb's juvenile criminal record, and Lamb's attorneys' objection to the lack of proper certification of the records was sustained. The state then introduced records relating to Lamb's adult convictions for burglary in

that this decision constituted ineffective assistance of counsel. He points out that his attorneys'

investigation into these potential mitigation witnesses was insufficient at best.[3] He then submits

several affidavits from potential mitigation witnesses. These affidavits, according to Lamb,

demonstrate that there were many witnesses who would have come to Texas to testify regarding his

non-violent character in the past. As such, Lamb contends that his trial counsel's failure to

investigate this line of defense, coupled with the affidavits detailing the nature of these witnesses'

testimony, present sufficient grounds for this court to issue a COA.

Jerry Davis, one of Lamb's trial counsel, testified before the magistrate judge that he made

a strategic decision not to put mitigating witnesses on the stand to testify on Lamb's behalf. Davis

---

Arkansas and robbery and attempted murder in Florida. The Arkansas prosecuting attorney testified that Lamb pleaded guilty to theft by receiving and criminal attempt of burglary on November 5, 1982, and was released for time served. Fred Respress, an investigator for the Madison County Florida Sheriff's Department, testified that Lamb pleaded guilty to armed robbery with a firearm and attempt to murder with a firearm on December 6, 1982. Respress testified that when he was taking Lamb into custody in Florida, Lamb stated, "I'm glad you S.O.B.'s finally caught me before I killed somebody else." The State presented the testimony of Muriel Burnette, the gas station attendant in Florida. She testified about how Lamb shot her in her back and hands and stole two cases of beer. The State rested.

The court read three special issues to the jury. Special Issue 1 required the jury to determine whether Lamb's conduct was "committed deliberately and with the reasonable expectation that the death of the deceased or another would result." Special Issue 2 required the jury to determine whether there was a "probability that the defendant [Lamb] will commit criminal acts of violence that would constitute a continuing threat to society." Special Issue 3 required the jury to determine whether Lamb's conduct was "unreasonable in response to the provocation, if any, by the deceased."

Lamb's attorneys argued that there was no evidence that Lamb's conduct was deliberate or that it was a planned act. On special issue 2, they pointed out that Lamb had two life sentences to serve in Florida, which would be in addition to a life sentence in Texas if they did not impose the death penalty, and that he would not therefore pose a continuing threat to society. Counsel then pled for leniency from the jury.

[3]The record indicates that his trial counsel and trial investigator successfully contacted two people: Lamb's grandmother, and the chief of police in Gustine, California where Lamb had grown up. They did not successfully contact Lamb's mother, whom apparently found out about the capital case and subsequent sentence after the jury handed down its verdict.

explained that he believed a plea for mercy would come better from his counsel than from friends and family whom Lamb had not seen or dealt with in several years. Davis further posited that, in his opinion, the jury would have looked at such testimony very skeptically considering (1) the brutal nature of the crime he was on trial for in Texas; (2) the crime he had committed in Florida; (3) the continuous criminal history of being in trouble with the law since he was a juvenile; and (4) his previous conviction in Arkansas. Finally, Davis explained that he had believed that a strategy of mitigating witnesses might backfire as it might harden the jury against Lamb and invite prosecutorial attack. Davis pointed out that the witnesses would have been vulnerable to "have you heard" types of questions by the prosecution, thus putting before the jury Lamb's non-violent but nonetheless criminal juvenile record. All in all, Davis testified that he made a strategic decision not to introduce mitigating witnesses.

Informed strategic decisions of counsel are given a heavy measure of deference and will not be second guessed. See Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir.), cert. denied, 118 S. Ct. 361 (1997); Boyle, 93 F.3d at 187. Moreover, "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance." See Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) (citing Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)), cert. denied, 118 S. Ct. 1061 (1998). Viewing Lamb's trial counsels' strategic decision through the lens of Rector and Mann makes it apparent that Lamb cannot prevail on his Strickland claim.

In order to get around Davis' repeated testimony that the decision not to use witnesses from California was made in order to keep evidence of Lamb's juvenile record from the jury, Lamb argues that this decision is not entitled to deference because it was uninformed and was made without

8

adequate investigation. He cites Thomas v. Kemp, 796 F.2d 1322 (11th Cir. 1986), in which that court affirmed the district court's grant of the writ. The court stated that the record supported the district court's conclusion that counsel's failure to investigate was deficient. His counsel admitted at the evidentiary hearing that he had made little effort to produce mitigating evidence because the defendant stated, in effect, that he did not want the jury's tears. See 796 F.2d at 1324. However, Thomas is distinguishable from the instant case because there was no testimony in Thomas that the counsel's decision was strategic in any way. There was no evidence of a criminal history which counsel wished to avoid opening up through cross-examination of character witnesses.

**B**

Lamb also argues that his trial counsels' explanation – that they did not want to use mitigating witnesses because they could have been impeached with "have you heard" questions – was based on an erroneous understanding of the law. He contends that, under Texas law, such questions are only allowed as to a reputation witness and would not be admissible to impeach witnesses who stated a personal opinion as to the accused's background. See Rutledge v. State, 749 S.W.2d 50 (Tex. Crim. App. 1988).

Rutledge does state that "have you heard" questions are properly utilized to impeach a witness who claims a familiarity with hearsay as to the defendant's reputation, and that a witness who testifies to his personal knowledge of the defendant's character cannot be impeached with "have you heard" questions. See 749 S.W.2d at 53. Lamb's proposed witnesses were not reputation witnesses. According to the proposed content of their testimony, they would be testifying about their personal

9

knowledge of Lamb's lack of violence. Lamb therefore is correct that these witnesses would not have been subject to "have you heard" questions.

However, his attorneys were not incorrect in their opinion that the mitigation witnesses could have been asked about their personal knowledge of Lamb's juvenile record. In Livingston v. Johnson, 107 F.3d 297 (5th Cir.), cert. denied, 118 S. Ct. 204 (1997), counsel decided against calling several suggested witnesses because, as counsel explained, anyone who knew the defendant well enough to testify to his good character would also know about his prior bad acts. See id. at 308. We agreed that this was plausible trial strategy. See id. In McCoy v. Lynaugh, 874 F.2d 954 (5th Cir. 1989), counsel did not call the proposed punishment witnesses because counsel was concerned about opening the door to allow the State to inquire into instances of prior bad acts of the defendant. See id. at 964. We concluded that counsel's actions did not fall outside the wide range of professional assistance. See id.

Lamb's trial counsel may have been incorrect in their use of the "have you heard" terminology when explaining why they did not introduce mitigating witnesses, but they were correct that any witnesses who were called to testify about their personal knowledge of Lamb's character could also be cross-examined about their personal knowledge of his juvenile criminal record. As Davis explained in his testimony before the magistrate judge:

> We felt like that the jury would view this type of evidence, this juvenile problems in their reasoning that – well, this guy's been in trouble for years; he started out as a juvenile offender, a burglar; now's he's graduated up to robbing liquor stores; burglaries, and now, capital murder; and he's had every break. This would, in our opinion, impress the jury that this guy's had a chance. He has flunked the system. We didn't want to call people like his momma or his grandmother or the police chief in California or a juvenile probation officer or a neighbor that had known that John had spent probably quite a bit of time in the criminal justice system – the juvenile criminal justice system. We didn't think that would be impressive at all or mitigating.

10

The state trial court found that Davis's strategy was to keep out aggravating circumstances such as Lamb's juvenile record and any proof that he had been in trouble all of his life as could be shown by the California witnesses. The state court also found that Joe Weis, Lamb's other trial attorney, agreed that evidence of Lamb's juvenile record was not in his best interest. We find that Lamb cannot make a substantial showing that his trial counsel performed deficiently under Strickland.

C

In the interest of thoroughness in this death penalty case, we address the prejudice prong of the ineffective assistance of counsel test as well. In order to satisfy the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 695. The petitioner must show that, absent counsel's deficiencies, there is a reasonable probability that the jury would not have sentenced him to death. Davis, 158 F.3d at 812. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. See Ransom, 126 F.3d at 723. Lamb must show evidence of sufficient quality and force to raise a reasonable probability that, had the evidence been presented to the jury, a life sentence would have resulted. See id. More particularly, when a defendant alleges that his counsel's failure to investigate prevented his counsel from making an informed tactical choice, he must show that knowledge of the uninvestigated evidence would have altered his counsel's decision, and that the bases underlying his counsel's tactical choice to pursue or forego a particular course would have been invalidated. See Gray v. Lucas, 677 F.2d 1086, 1093 (5th Cir. 1982).

11

Even if we were to assume that his trial counsel failed to make an adequate investigation, Lamb has failed to show that counsel would have made a different decision about trial strategy if they had investigated and amassed the information contained in the affidavits of the proposed witnesses. Weis specifically testified that he would have considered the evidence but that he was not sure if he would have made a different strategic decision, again referring to the possibility of opening the door to the juvenile record. In the face of the proposed evidence, Davis never wavered from his opinion that the proposed evidence of a nonviolent history would have been more harmful than helpful. Additionally, Weis expressed the opinion that he did not believe the proposed testimony would have affected the outcome because of the testimony from the female gas station attendant about the robbery and shooting in Florida. He did not believe that any of the testimony in the affidavits could overcome that kind of devastating evidence.

The state trial court concluded that even if counsel's actions were in error, the result of the proceedings would not have been different. Lamb has not shown that this conclusion involved an "unreasonable application" of clearly established federal law as determined by the Supreme Court. See § 2254(d)(1); Davis, 158 F.3d at 812. Reasonable jurists considering this claim would not be of "one view" that the state court's judgment was wrong. See Williams v. Cain, 125 F.3d 269, 279-80 (5th Cir. 1997), cert. denied, 119 S. Ct. 144 (1998).

In Williams, the state court found that the defendant was not prejudiced by counsel's failure to present the testimony of family and friends regarding the defendant's troubled family history. The evidence would have opened the door for cross-examination regarding the defendant's drug and alcohol abuse, expulsion from school, and discharge from his job. The evidence would have had little mitigating effect against the evidence of the murder at issue in that case. See id. Similarly, Lamb

12

cannot show that his proposed mitigating evidence of a non-violent history and troubled family life raises more than a mere possibility of a different outcome, and not the required "reasonable probability." Ransom, 126 F.3d at 723. Given Lamb's confession to the Texas murder, the subsequent robbery and shooting of the female gas station attendant in Florida five days later, and especially given his statement to the authorities taking him into custody in Florida that he was glad they had "finally caught [him] before [he] killed somebody else," we cannot say that there is a reasonable probability of a different outcome. See Carter, 131 F.3d at 465 (holding that given the defendant's confession to the murder of a service station attendant during a robbery, the court could not conclude that the testimony of character witnesses as to the defendant's reputation as a good and peaceful person would have sufficiently impressed the jury to avoid the death sentence).

#### CONCLUSION

Lamb has not made a substantial showing of the denial of a constitutional right. We therefore DENY his request for a COA.