IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-51065
_____

JOHN T. SATTERWHITE,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director, Texas Department
of Criminal Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(96-CA-955)
_____

January 7, 2000

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

In this death penalty case, the petitioner, John T. Satterwhite, seeks a certificate of appealability ("COA") to allow review of the district court's judgment denying his petition for federal habeas relief. Satterwhite seeks certification of ten issues relating to his second state court trial and death sentence for the murder of Mary Frances Davis, after the United States Supreme Court had set aside his first death sentence for this capital murder. These issues today raise various claims under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. We

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

conclude that Satterwhite has failed to make a substantial showing of the denial of a constitutional right. Thus, we deny his application for a COA.

I

A

The facts and procedural history underlying today's appeal are reported in Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988); and Satterwhite v. State, 858 S.W.2d 412 (Tex. Crim. App. 1993)(en banc). Although we will not render a full recitation of the facts and procedural history of this case, a few words may prove helpful in gaining a fuller understanding of the case we decide today.

On March 15, 1979, Satterwhite was charged with the capital crime of murdering Mary Francis Davis during a robbery. Before Satterwhite was represented by counsel, the state requested a psychological examination to determine if he was competent to stand trial, was sane at the time of the offense, and whether he posed a future danger to society. The court granted the state's request, and Satterwhite was examined by Psychologist Betty Lou Schroeder.

On April 4, Satterwhite was indicted and the court appointed counsel to represent him. On April 17, the state filed a second motion with the court requesting a psychiatric evaluation of Satterwhite's competency to stand trial, his sanity, and his future dangerousness. The state did not serve defense counsel with a copy of this motion. The next day, the court granted the state's motion

2

and ordered the sheriff to produce Satterwhite for examination by Psychologist Betty Lou Schroeder and Psychiatrist John T. Holbrook.

On May 18, a letter was sent to the trial court from Psychiatrist James P. Grigson, stating that pursuant to court order he had examined Satterwhite in the Bexar County jail. The letter further indicated that as a result of this examination, Dr. Grigson had concluded that Satterwhite "is extremely dangerous and will commit future acts of violence."

Satterwhite was tried later that same year and convicted of capital murder. In accordance with Texas law, a separate sentencing hearing was conducted. See Tex. Code Crim. P. art. 37.071(1)(Vernon 1999). During the sentencing hearing, the state presented the testimony of Dr. Grigson in support of its case that Satterwhite should be sentenced to death. Dr. Grigson testified that in his opinion, Satterwhite presented a continuing threat to society. The jury answered yes to both of the special issues presented after the sentencing hearing, and the court sentenced Satterwhite to death.

Following affirmance of the conviction and sentence by the Texas Court of Criminal Appeals,[1] the United States Supreme Court granted certiorari and reversed Satterwhite's sentence.[2] The Court

---

[1]See Satterwhite v. State, 726 S.W.2d 81 (Tex. Crim. App. 1986).

[2]See Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988).

3

held that "the use of Dr. Grigson's testimony at the capital sentencing proceeding on the issue of future dangerousness violated the Sixth Amendment." Satterwhite, 486 U.S. at 255. After applying the harmless error standard under Chapman to the admission of the evidence during the sentencing phase of the trial, the Court concluded: "[W]e find it impossible to say beyond a reasonable doubt that Dr. Grigson's expert testimony on the issue of Satterwhite's future dangerousness did not influence the sentencing jury." Id. at 260. Thus, the Court reversed the judgment of the Texas Court of Criminal Appeals to the extent it was inconsistent with its opinion. Id.

Apparently the state of Texas decided just to try the entire case again from the beginning. Thus, on March 29, 1989, Satterwhite was re-indicted by a Bexar County grand jury on a single count of capital murder. On August 3, the state trial court held a competency hearing in accordance with Texas Code of Criminal Procedure art. 46.02 § 4[3] to determine whether Satterwhite was competent to stand trial. The hearing resulted in a mistrial when the jury could not return a unanimous verdict regarding

---

[3]Texas Code of Criminal Procedure art. 46.02 § 4 states in relevant part:
> If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial. This determination shall be made by a jury that has not been selected to determine the guilt or innocence of the defendant.

Tex. Code Crim. P. Ann. art. 46.02 § 4 (West 1999).

4

Satterwhite's competency. On August 8, a second competency hearing was held. This hearing, like the first, ended in a mistrial. On August 9, a third competency hearing was conducted, and the jury returned a unanimous verdict of competency to stand trial. On August 16, a different jury returned a guilty verdict on the indictment's single count of capital murder. Two days later, the same jury returned affirmative answers to both of Texas' special issue capital murder instructions, and the court sentenced Satterwhite to death.

On March 10, 1993, the Texas Court of Criminal Appeals affirmed Satterwhite's conviction and sentence,[4] and on November 8, the Supreme Court denied Satterwhite's petition for certiorari.[5] On February 22, 1994, Satterwhite filed his original application for state habeas relief asserting some twenty clams for relief. The petition was subsequently amended to raise an additional eighteen issues. On June 26, 1996, after the state trial court conducted an evidentiary hearing, the Texas Court of Criminal Appeals denied Satterwhite's petition for habeas relief.

On September 9, 1996, Satterwhite filed a motion for a stay of execution and appointment of counsel in federal district court. On September 25, the district court granted Satterwhite's request for

---

[4]See Satterwhite v. State, 858 S.W.2d 412 (Tex. Crim. App. 1993).

[5]See Satterwhite v. Texas, 510 U.S. 970, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993).

a stay of execution and appointed counsel to represent him in his federal habeas proceeding. On December 13, Satterwhite filed his second federal habeas petition asserting twenty-four claims for relief.[6] On September 25, 1998, the district court denied Satterwhite's petition for habeas relief, vacated the stay of execution granted on September 25, 1996, and denied his application for a COA.

B

Satterwhite now seeks review of the final judgment of the district court denying his petition for federal habeas relief. Unless a certificate of appealability ("COA") is granted, this court lacks jurisdiction to hear Satterwhite's appeal. See 28 U.S.C. § 2253(c)(1)(A). To determine if a COA should be issued we must decide whether Satterwhite "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Drinkard v. Johnson, 97 F.3d 751, 756 (5th Cir. 1996).[7] The petitioner can make such a showing of a denial of a constitutional

---

[6]Satterwhite filed his first pro se federal habeas petition on August 1, 1995. This petition was dismissed without prejudice on October 12, 1995, because Satterwhite wished to pursue unexhausted state court remedies.

[7]In Drinkard v. Johnson, 97 F.3d 751 (5th Cir. 1996), we determined that the standard for granting a COA under the Anti-terrorism and Effective Death Penalty Act ("AEDPA") is the same as that for granting a certificate of probable cause ("CPC"). Id. at 765. Thus, the court in Drinkard looked to the Supreme Court's holding in Barefoot v. Estelle, 463 U.S. 880 (1983), establishing the standard for issuing a CPC, to determine the standard for issuing a COA. Drinkard, 97 F.3d at 765.

right if he "demonstrates that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."  Barefoot v. Estelle, 463 U.S. 880, 893 n.4, 103 S.Ct. 3383, 3394 n.4, 77 L.Ed.2d 1090 (1983)(citations omitted); see also, Drinkard, 97 F.3d at 755; Lamb v. Johnson, 179 F.3d 352, 356 (5th Cir. 1999).  In a capital case, "the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate," although the court may consider the nature of the penalty in deciding whether to allow an appeal.  Barefoot, 463 U.S. at 893; see also, Lamb, 179 F.3d at 356.

Satterwhite seeks a COA on the following issues[8]: (1) the appropriate standard of review under the AEDPA; (2) whether the state trial court erred in admitting into evidence the handgun seized in the search of the car driven by Satterwhite[9]; (3) whether

---

[8]Satterwhite's application for a COA, filed with our court, is somewhat convoluted and appears to raise many of the same issues raised in his federal habeas petition that was denied by the district court.  Consequently, when in doubt of the exact claim raised by this petition for a COA, the court will refer to his federal habeas petition for clarification.

[9]Satterwhite asserts that Congress has eliminated the bar to federal habeas review of Fourth Amendment claims, memorialized in the Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976), by passing the AEDPA.  In Stone, the Court stated, "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Id. at 495.  Satterwhite does not allege that he was denied a full

the state trial court erred in denying Satterwhite's request for a specific jury instruction on mitigating evidence; (4) whether Texas' capital sentencing scheme on its face and as applied violates the Supreme Court's holding in Penry; (5) whether the state trial court erred in its definition of the term "deliberately" contained in the sentencing phase jury instruction;[10] (6) whether the state trial court and the Texas Court of Criminal Appeals erroneously allowed the state to introduce into evidence during the competency hearing the testimony of state expert Dr. John C. Sparks regarding a brief encounter he had with Satterwhite during a break in the competency hearing; (7) whether Satterwhite's

---

and fair opportunity to litigate his Fourth Amendment claims. Instead, he asserts that the AEDPA has eliminated the bar to the federal habeas review of Fourth Amendment claims. Satterwhite argues that the language of the statute and its legislative history indicate that Congress intended to supersede the Supreme Court's holding in Stone by passing the AEDPA. See 139 Cong. Rec. S10925, S10923 (Aug. 6, 1993); 141 Cong. Rec. S7803, S7835 (June 7, 1995). While the portions of the Congressional Record cited by Satterwhite might suggest some very limited support for his argument, we are unwilling to overrule the Supreme Court based on such thin evidence of Congressional intent. In short, Satterwhite has failed to meet his burden for a COA on his Fourth Amendment claim.

[10]Satterwhite argues that the jury instructions given during the sentencing phase of his trial erroneously defined the term "deliberately." We are without authority to reach the merits of this claim. Relying on our court's previous holding in Amos v. Scott, 61 F.3d 333 (5th Cir. 1995), we hold that Satterwhite's failure to contemporaneously object to the definition of the term "deliberately" created a procedural bar for review under Texas law, which in turn prevents our court from review of this claim. See also, Satterwhite, 858 S.W.2d at 430. However, we should note that we effectively address this claim later in this opinion when we consider Satterwhite's ineffective counsel claim based on counsel's failure to object to this instruction.

8

trial counsel rendered ineffective assistance of counsel by failing to (a) request a continuance to obtain the petitioner's medical records from the Ellis II prison hospital, and (b) raise a Brady claim based on the failure of the state to produce the petitioner's medical records regarding the treatment he received at the Ellis II prison hospital; (8) whether Satterwhite's counsel rendered ineffective assistance during the sentencing phase of his trial by failing to object to the definition of "deliberately" contained in the jury charge; (9) whether Satterwhite's counsel on direct appeal rendered ineffective assistance by failing to raise as a point of error the admission of Dr. Sparks's interview of the petitioner during a recess at the competency hearing; and (10) whether the state's failure to turn over Satterwhite's medical records regarding the treatment he received from the Ellis II prison hospital resulted in a violation his Fifth and Fourteenth Amendment rights.

## II

### A

Before proceeding to Satterwhite's substantive arguments for a COA, we will briefly address his contentions that our interpretation of the AEDPA, as reflected in Drinkard v. Johnson, 97 F.3d 751 (5th Cir. 1996), and its progeny, is in error. Assuming we had the authority to address this issue on an application for a COA, our precedent is clear that "subsequent panels cannot overrule prior panels, absent en banc review or a

9

change in law by Congress or the Supreme Court." Marathon Oil Co. v. Ruhrgas, 145 F.3d 211, 221 (5th Cir. 1998); see also Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997); Pruitt v. Levi Strauss & Co., 932 F.2d 458, 465 (5th Cir. 1991). Although Satterwhite contends that our holding in Drinkard "differs radically from established Supreme Court precedent," a feeling shared by more than a few commentators, a review of Supreme Court precedent on point does not support such a schism. Thus, even assuming we had the authority to consider Satterwhite's claim, it is clear that this claim lacks merit.

B

Satterwhite argues that his Eighth Amendment rights were violated because the trial court refused to give a separate mitigating instruction, explicitly instructing the jury to consider all of the mitigating evidence presented during both the trial phase and the sentencing phase of his trial. Absent such an explicit instruction, Satterwhite argues that the special issues given during the sentencing phase of his trial failed to provide the jury a vehicle by which it could properly consider and give effect to evidence mitigating his culpability for the murder of Davis.[11] Satterwhite argues that because such an instruction was

---

[11]The two Texas special issues submitted to the jury during the sentencing phase of Satterwhite's trial were in full accord with the requirements of Texas Code of Criminal Procedure, art. 37.071 and read as follows:
  (1)  Was the conduct of the Defendant that caused
 the death of the Deceased committed deliberately and with

10

not given, mitigating evidence was placed beyond the effective reach of the jury, contrary to the Eighth Amendment as expounded in Penry v. Lynaugh, 492 U.S. 302 (1989).

Assuming arguendo that the mitigating evidence offered by Satterwhite is constitutionally relevant,[12] he has failed to show that such evidence was beyond the effective reach of the jury. The "gist of Penry deals with the ability of a jury to consider a defendant's culpability and, in determining whether death is an appropriate punishment, to be able to exercise a 'reasoned moral response' to evidence tending to mitigate that culpability." Davis, 51 F.3d at 463 (quoting, Penry, 492 U.S. at 319). Here, the jury was instructed that "deliberately" means "with careful consideration or deliberation; with full intent; not hesitantly or carelessly--as a deliberately formed purpose; with awareness of consequences." Further, the jury was instructed to "consider any evidence introduced during this trial which in you[r] opinion mitigates against the imposition of the death penalty or indicates

---

the reasonable expectation that the death of Mary Francis Davis would result?

(2) Is there a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society?

[12]While Satterwhite could not produce any evidence to establish that he was mentally retarded, he did offer evidence that he characterizes as "mitigating" regarding mental illness, a personality disorder that he suffered from at the time of the offense, and evidence regarding his childhood including: inadequate parenting, the absence of a father, poverty, and a lack of educational opportunities.

11

the aggravating nature of the offense alleged," and that "evidence may be considered by you to be 'mitigating' if it is such as does not constitute an excuse or justification for the crime but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability for the crime."[13]  Clearly, these instructions gave the jury ample instruction and opportunity to consider any mitigating evidence Satterwhite had introduced before imposing a sentence.[14]  Thus, because Satterwhite has failed to show that the mitigating evidence was placed beyond the effective reach of the jury, he has failed to make a substantial showing of a denial of his Eighth Amendment rights in this regard.

C

Satterwhite next argues that the trial court's admission of Dr. Sparks's expert opinion--that Satterwhite was mentally

---

[13]In Penry, the jury was not given an instruction regarding the meaning of "deliberately," and was not instructed to consider all of the mitigating evidence offered by the defendant.  Thus, the circumstances in Penry are not analogous to those presented by Satterwhite's appeal.

[14]Similarly, the court in Davis, when faced with an almost identical situation stated: "[T]he definition of 'deliberately' provided to [the defendant's] jury would have clearly directed Penry's jury to consider his mitigating evidence and how it bore on his personal culpability.  As noted, under the special issues, Penry's jury was foreclosed from considering his inability 'to control his impulses or to evaluate the consequences of his conduct.'  Had the Penry jury been instructed, as it was in this case, that it could consider evidence presented in mitigation of the penalty, as well as that 'deliberately' was 'characterized by or resulting from careful consideration,' it would have been able to consider the [mitigating evidence offered by the defendant]." Davis, 51 F.3d at 463.

12

competent--which was based on a brief encounter between the two men during a break in the competency hearing, resulted in a violation of his Fifth and Sixth Amendment rights to counsel. Satterwhite argues that because he was not specifically informed that the results of this encounter, which he terms as a "psychiatric interview," could be used at the sentencing phase of his trial, his Fifth and Sixth Amendment rights as defined by the Supreme Court in Estelle v. Smith, 451 U.S. 454 (1981) and Satterwhite v. Texas, 486 U.S. 249 (1988), were violated.[15]

During a break for lunch in the competency hearing, Dr. Sparks walked over to Satterwhite, who was sitting alone, and asked him "if this was like doing the same thing again?" Satterwhite's only response to the question was a chuckle. Dr. Sparks's testimony regarding the encounter does not indicate whether any other words were spoken between the two men, but he did testify that the encounter was "very short." Based on this brief encounter, Dr. Sparks offered the following testimony: "[H]e was aware of what was happening. He was not completely dissociated from the situation. And he displayed enough feeling to make me aware that he was not different than he had been on the second of August." It is important to note that the testimony in question was not

---

[15]Satterwhite does not allege that the testimony regarding this brief encounter was admitted into evidence during the guilt or sentencing phases of his re-trial; the record indicates that this testimony was admitted into evidence only during the competency trial. Furthermore, no reference to this exchange was made during the guilt or sentencing phase of Satterwhite's re-trial.

13

introduced into evidence during the guilt or sentencing phase of Satterwhite's criminal trial. Rather, the testimony regarding this brief encounter was introduced only during the competency hearing, a civil proceeding.

We turn first to Satterwhite's Fifth Amendment claim. He argues that his rights against self-incrimination were violated because he was not advised that his statements could be used against him during the sentencing phase of his trial. This claim lacks merit. Testimony regarding this brief encounter with Dr. Sparks was not used for any purpose other than to determine whether Satterwhite was competent to stand trial. Thus, as the Supreme Court observed in Estelle v. Smith, no Fifth Amendment violation has occurred. See Estelle, 451 U.S. at 465 (stating that "if the application of [the psychiatrist's] findings had been confined to serving [the function of determining the defendant's competency], no Fifth Amendment issue would have arisen").

With respect to Satterwhite's Sixth Amendment claim that he was entitled to have counsel present during the encounter, he acknowledges that competency proceedings under Texas law are not criminal proceedings but instead are civil in nature.[16] Nevertheless, he argues because such proceedings are "part and parcel of the State's attempt to convict a defendant of capital

---

[16]See White v. State, 591 S.W.2d 851, 853 (Tex.Crim.App. 1979)(stating that competency hearings under Texas law are civil in nature); Lowe v. State, 999 S.W.2d 537, 538 (Tex.Crim.App. 1999).

14

murder," he is guaranteed the same protections as apply to the guilt and sentencing phases of his trial for capital murder.

Satterwhite fails to cite to any authority that the full panoply of criminal rights are available to him at this civil competency hearing. As we have earlier noted, this testimony was never introduced at either the guilt or sentencing phase of his capital murder trial. Furthermore, nothing occurred here more than a casual encounter in which Satterwhite did not incriminate himself in anyway that an attorney might have prevented. Consequently, without denigrating Fifth Amendment right to counsel in these hearings or similar situations, we see no basis under the facts of this case to extend the Sixth Amendment right to counsel to Satterwhite's civil competency hearing. See Brown v. Butler, 811 F.2d 938, 941 (5th Cir. 1997)(stating that "Estelle should be read narrowly . . . [and restricted] to the circumstances of th[at] case"). Thus, because Satterwhite has failed to make a substantial showing of the denial of a constitutional right in this regard, his claim fails.

D

Satterwhite next argues that his counsel rendered ineffective assistance during the sentencing phase of his trial by failing to object to the definition of "deliberately" contained in the jury charge. As a result of counsel's failure to object to the definition given to the jury, the error was procedurally defaulted

15

and thus could not be addressed by the Texas Court of Criminal Appeals on direct appeal.  See <u>Satterwhite</u>, 856 S.W.2d at 430.

During the sentencing phase of Satterwhite's trial, the jury was instructed as follows:

> As employed in the first Special Issue, the word "deliberately" has a meaning different and distinct from "intentionally" as that word was previously defined in the charge of guilt.
> The term "deliberately" as used in the first Special Issue is defined as with careful consideration or deliberation; with full intent; not hastily or carelessly--as a deliberately formed purpose; with awareness of the consequences.

Satterwhite's challenge to the jury instruction focuses on the trial court's use of the phrase "with full intent" in defining "deliberately."  Satterwhite argues that the term "deliberately" and the term "intentionally" have distinct meanings, and that the court's use of the phrase "with full intent" in defining the term "deliberately" negated the court's earlier instructions that the terms had distinct meanings.  Thus, Satterwhite argues that his counsel's failure to object to the definition of the term "deliberately" given by the court stripped him of a fertile ground for appeal--one that would have provided him with a basis to secure a new trial.

In order for Satterwhite to succeed on his ineffective assistance claim, he must first demonstrate that this instruction was constitutionally suspect.  If he cannot make this showing, counsel was neither ineffective nor has Satterwhite suffered prejudice.  When reviewing a jury instruction to determine if it

16

comports with basic constitutional guidelines, the inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." See Drinkard, 97 F.3d at 757 (citing Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990)). "In evaluating the instruction, we do not engage in a technical parsing of this language of the instruction, but instead approach the instruction in the same way that the jury would--with a 'common sense understanding of the instruction in the light of all that has taken place at the trial.'" Id., (quoting Johnson v. Texas, 509 U.S. at 368).

As Satterwhite's petition correctly notes, the members of the jury were extensively questioned during voir dire on the distinction between the terms "intentional" and "deliberate." Indeed, as Satterwhite's petition further notes, during the course of the jury charge, "great care was taken to separate the two words." In fact, the jury was expressly instructed that the term "deliberately" has a meaning different and distinct from the word "intentionally." In the light of this background, there is simply no reasonable likelihood that the state trial court's use of the phrase "with full intent" in defining the term "deliberately" had the effect of causing the jury to fail to consider constitutionally relevant evidence. Thus, because the jury instruction given during the sentencing phase did not transgress basic constitutional

17

guidelines, the failure of his counsel to object did not render his assistance constitutionally ineffective.

E

In the context of his Fifth and Sixth Amendment claims, we have already addressed Dr. Sparks's expert testimony based on a casual encounter he had with Satterwhite during the competency hearing. Based on this same scenario, Satterwhite further argues that his counsel on direct appeal rendered ineffective assistance by failing to raise the admission of this testimony as a point of error.

Persons convicted of a crime are constitutionally entitled to effective assistance of counsel in their first appeal of right. Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998)(quoting Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)). Counsel's performance on direct appeal is judged under the two-prong Strickland test. Id. (citing Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1998)). Effective assistance of counsel does not, however, require that every nonfrivolous ground of appeal be raised. Id. (citations omitted). Instead, effective assistance of counsel should be judged on whether counsel's performance is reasonable. Id. To demonstrate prejudice, "a petitioner must show not only that had counsel acted in a different manner a new trial would have been granted, but also, that as a result of counsel's incompetence, the trial was rendered fundamentally unfair or

18

unreliable." Id. (citing Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993)).

As we have previously discussed, the state trial court's decision to admit the testimony at the competency hearing of Dr. Sparks did not result in a violation of either Satterwhite's Fifth or Sixth Amendment right to counsel. For this reason, appellate counsel's failure to raise this issue was not prejudicial to Satterwhite's appellate case because no new trial would have been granted on this point. Thus, Satterwhite's claim that appellate counsel's assistance was constitutionally ineffective lacks merit.

F

Next, Satterwhite argues that the state's failure to turn over his medical records regarding the treatment he received from the Ellis II prison psychiatric hospital constituted a violation of his Fifth and Fourteenth Amendment rights as defined by the Supreme Court in Brady v. Maryland, 373 U.S. 83 (1963). He argues the records would have indicated that he was prescribed the drug Haldol--which is only prescribed to treat persons with "serious mental illness." Consequently, had the records been produced, they would have been helpful to bolster his arguments made during the guilt and sentencing phases of his trial, that because he suffered from serious mental illness, he could not have formed the requisite intent to have acted deliberately.

Under Brady, the defendant bears the initial burden of proving that (1) evidence was suppressed by the prosecution; (2) the

19

evidence was favorable to the defense; and (3) the evidence was material either to guilt or to punishment. <u>Brady</u>, 373 U.S. at 87; <u>United States v. Aubin</u>, 87 F.3d 141, 148 (5th Cir. 1996). If the information is available to the defendant through the exercise of reasonable diligence, the state had no obligation to deliver it to the defendant. <u>See</u> <u>Williams v. Scott</u>, 35 F.3d 159, 163 (5th Cir. 1994); <u>United States v. Ellender</u>, 947 F.2d 748, 757 (5th Cir. 1991)(stating that an inmate's prison records do not qualify as <u>Brady</u> materials because they are not suppressed by the prosecution, and the defendant can easily gain access to them through the exercise of reasonable diligence).

Satterwhite's <u>Brady</u> claim fails for two reasons. He has failed to carry his burden of proving first that the state was in fact in possession of these medical records, and second, that the state was suppressing evidence favorable to him. As the district court noted when denying Satterwhite's federal habeas petition, Satterwhite has failed to offer any evidence showing that any such medical or psychiatric records ever existed. Other than Satterwhite's assumption that because he was under the care of the Ellis II staff some records must exist, he does not challenge the district court's finding in this respect. Consequently, Satterwhite has failed to meet his burden of proving that the state was ever in possession of these medical records. It follows that he has not shown that the state was in fact suppressing any

20

evidence favorable to him by failing to deliver the records, which he has not shown to exist.

We should also note that Satterwhite has failed to demonstrate that the favorable information alleged to be contained in those records was not readily accessible to him and his trial counsel. In fact, Satterwhite's petition acknowledges that the medical records that actually were available to his trial counsel clearly indicated that he had been prescribed Haldol while in prison. Further, Satterwhite's petition acknowledges that he himself was aware that he had been prescribed the drug while under the care of the staff at the Ellis II prison hospital. Indeed, Satterwhite has failed to even allege, much less prove, that the prison medical records, assuming that they existed, contained any information that was not known to him or his trial counsel. Consequently, Satterwhite has failed to show that the state has actually suppressed any evidence favorable to him. For all these reasons, Satterwhite has failed to meet his burden under Brady, and this claim fails.

G

Finally, on the basis of the facts discussed immediately above, Satterwhite argues that his trial counsel rendered ineffective assistance by: (1) failing to request a continuance to obtain the medical records detailing the treatment he received at the Ellis II prison hospital; and (2) by failing to object to the state's failure to turn over these records so as to preserve the

21

issue for appeal. As we have previously discussed, Satterwhite has failed to demonstrate that the state actually had the records. We would further note, that by failing to allege that the records he sought contained any information that was not known to him or to his trial counsel, he has failed to show that the state suppressed any information favorable to him. Thus, his claim that counsel's assistance was rendered constitutionally ineffective as a result of his failure to either seek the records or to object to the state's failure to turn over the records fails, if for no other reason, because he can show no prejudice from these alleged errors by his counsel.

## III

In conclusion, Satterwhite has failed to make a substantial showing of the denial of any constitutional right. Thus, his request for a COA is DENIED, and the appeal is DISMISSED.

DENIED and DISMISSED.