**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-40072

WILLIAM K. BURNS,

Petitioner-Appellant,

VERSUS

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
For the Eastern District of Texas
5:99-CV-15

October 15, 2001

Before DAVIS, JONES and DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.[*]

William Burns, a Texas death row inmate, seeks a certificate of probable cause to appeal the district court's dismissal of his habeas petition. We deny the certificate.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

William Burns was indicted for the capital offense of murder while in the course of a robbery in 1981.[2] William Burns was tried, convicted, and sentenced to death that same year, but this conviction was eventually reversed on appeal by the Texas Court of Criminal Appeals based on error in the jury charge.[3] Burns was again tried, convicted, and sentenced to death in 1986, but that conviction was also reversed by the Texas Court of Criminal Appeals based on the trial court's exclusion of mitigation evidence.[4] Burns was tried, convicted, and sentenced to death for a third time in 1989. He appealed to the Texas Court of Criminal Appeals, which affirmed his conviction in 1992. The United States Supreme Court denied certiorari in 1993.[5]

Burns filed an application for writ of habeas corpus in 1998 in state district court. The state court held an evidentiary hearing and issued findings of fact and conclusions of law recommending denial of relief, which the Court of Criminal Appeals

---

[2] William Burns, his brother Victor Burns, and a friend, Danny Ray Harris were accused of robbing and murdering William Burns' "replacement" at the plant from which petitioner had been fired shortly before the offense.

[3] Burns v. State, 703 S.W.2d 649 (Tex. Crim. App. 1985).

[4] Burns v. State, 761 S.W.2d 353 (Tex. Crim. App. 1985).

[5] Burns v. Texas, 510 U.S. 838, 114 S.Ct.118 (1993).

adopted in 1999.  Burns then filed a petition for federal habeas relief.  The district court denied relief in 2000, and petitioner filed the instant application for COA with this court.

**B.**

A COA may only issue if the petitioner makes a "substantial showing of the denial of a constitutional right."[6] This burden can be met if the issues presented "are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[7]

A death sentence alone does not justify the automatic issuance of a COA, although it is a proper consideration.[8]  Any doubts as to whether the COA should issue are to be resolved in the petitioner's favor.[9]

Burns' petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act (ADEPA).  Thus, for

---

[6]28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S.Ct. 1595, 1603 (2000); <u>United States v. Kimler</u>, 150 F.3d 429, 431 (5th Cir. 1998).

[7]<u>Miller v. Johnson</u>, 200 F.3d 274, 280 (5th Cir. 2000)(quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4, 103 S.Ct. 2283, 3394 n. 4 (1983); <u>Hicks v. Johnson</u>, 186 F.3d 634, 636 (5th Cir. 1999), cert. denied, 528 U.S. 1132, 120 S.Ct. 976 (2000); <u>see also Slack</u>, 529 U.S. at 484, 120 S.Ct. at 1603-4 (<u>quoting Barefoot v. Estelle</u>, 463 U.S. at 893 n. 4; 103 S.Ct. at 3394 n.4).

[8]<u>Lamb v. Johnson</u>, 179 F.3d 352, 356 (5th Cir. 1999), cert denied, 528 U.S. 1013, 120 S.Ct. 522 (1999).

[9]<u>Id</u>.

questions of law or mixed questions of law and fact adjudicated on the merits in state court, we may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]."[10]  We now turn to Burns' specific claims.

## II.

### A.  Failure to introduce mitigating evidence

Burns first argues that his trial counsel was ineffective in failing to introduce evidence that his brother, Victor Burns, entered a plea of guilty to the offense in question.  Petitioner contends that this information would have been relevant mitigating evidence to be used during the punishment phase.  Texas case law did not permit Burns to introduce this evidence in mitigation.  The Texas Court of Criminal Appeals has stated the following: "We do not see how the conviction and punishment of a co-defendant could mitigate appellant's culpability in the crime.  Each defendant should be judged by his own conduct and participation and by his own circumstances."  Evans v. State, 656 S.W.2d 65, 67 (Tex. Crim. App. 1983).  See also Cordova v. Johnson, 157 F.3d 380, 383–84 (5th Cir. 1998).  Burns argues further that even if his co-defendant's *sentence* would not be relevant mitigating evidence, his co-defendant's *conviction* would.  The language of Evans, cited above,

---

[10]See Miller, 200 F.3d at 281.

4

however, makes it clear that this argument fails as well.

In <u>Lockett v. Ohio</u>, 438 U.S. 586, 98 S.Ct. 2954 (1978), the Supreme Court held that the sentencer can generally consider as a mitigating factor "any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." <u>Id.</u> at 604, 98 S.Ct. at 2965.

Burns argues that his brother's guilty plea judicially establishes that he was the "triggerman" and that, despite the Texas case-law cited above, his attorney should have proffered this evidence because it is a relevant "circumstance of the offense." This argument is without merit. Victor Burns plea stated that he "...intentionally and knowingly cause[d] the death of an individual, Johnny Lynn Hamlett, by shooting him with a gun...." No evidence was offered in support of Victor Burns' conviction, and it is unclear whether Victor caused the death as a principal or as an accomplice. The state was entitled to obtain the conviction without showing that Victor was the triggerman. The plea does not therefore "judicially establish" that Victor Burns was the sole "triggerman." Additionally, counsel had very good reason for not attempting to make such an argument. In William Burns' statement to the police, he admitted that he shot the victim. ("I took the pistol out and I shot through the crack. There were only two bullets in the pistol and I shot them.")

Because an attorney cannot be ineffective for failing to raise

5

meritless objections,[11] petitioner's trial counsel did not perform deficiently in failing to raise either of the above arguments.  We cannot, therefore, say that trial counsel was ineffective for failing to introduce this evidence, and the district court was correct in reaching this conclusion.[12]

## B.  Eighth Amendment Violations

Petitioner contends that his Eighth Amendment rights were violated because he received a harsher sentence than his cohorts. Victor Burns received a life sentence as a result of a plea bargain he entered into with the State, and Danny Ray Harris was never tried for the offense.  Petitioner therefore argues that his "death sentence is disproportionate to his culpability in the offense" because "petitioner neither possessed a weapon nor fired a shot at the victim."  As discussed above, whether petitioner actually shot

---

[11]Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

[12]Burns asserts a separate but related claim that the government violated Brady v. Maryland in failing to disclose its intent to dismiss the charges against co-defendant Danny Ray Harris. Brady, 373 U.S. 83, 83 S.Ct. 1194 (1963). Burns argues that he suffered prejudice from the state's failure to disclose this information because he could have used it as mitigating evidence in the punishment phase of his trial.  Even if the state did not intend to try Harris and if it had disclosed this intent, this evidence would not have been admissible under Texas law for the same reason that the disposition of the charges against Victor Burns were not admissible.  Moreover, this evidence is irrelevant to a defendant's character, prior record or the circumstances of the offense. Lockett v. Ohio, 438 U.S. at 601-02.  See also Penry v. Lynaugh, 492 U.S. 302, 327-28, 109 S.Ct. 2934, 2951-52 (1989).  Because the evidence was inadmissible, under Texas law and constitutionally irrelevant to mitigation, the state had no duty to disclose it under Brady.

the victim is a disputed issue.

In finding that petitioner's death sentence was not disproportionate in light of his moral culpability, the magistrate judge entered proposed findings and recommendations which summarize the resolution of this issue perfectly:

> "Disparate sentencing appears to some degree inherent in our system. The Supreme Court has repeatedly reminded us of this fact and has consistently held that, even in the special context of the death penalty, there is nothing unconstitutional about it." United States v. Ives, 984 F.2d 649, 650 n.3 (5th Cir. 1993). Thus, the mere fact that other perpetrators were treated more leniently does not render Burns' death sentence a violation of the Constitution and laws of the United States. Absent such a violation, the Court cannot grant habeas corpus relief.

Magistrate Judge's Proposed Findings and Recommended Disposition, at 5.

Burns has proffered no fact or persuasive legal argument that would lead us to conclude that reasonable jurists could find the district court's decision on this issue (which adopted the magistrate's findings reproduced above) debatable or wrong.

### C. Juror problems

**1. Ineffective assistance of counsel in failing to strike a potential juror.**

Burns argues that his trial counsel was ineffective in failing to exercise a peremptory challenge against juror Tennyson. This argument is based on Tennyson's statement during voir dire that his religious beliefs lead him to the conclusion that "if a person take a life then his life should be took [sic]." Burns argues that his

7

lawyer should have stricken Tennyson from the jury because he held an intractable belief that death is the only punishment he would consider. This argument fails.

Burns failed to object to the magistrate judge's findings (adopted by the district court) rejecting this ineffective assistance of counsel claim. The district court therefore reviewed Burns' claim only for plain error and held that the magistrate judge's finding (that trial counsel's failure to excuse Tennyson was not ineffective assistance of counsel) was not debatable among jurists of reason. This conclusion is sound because the record shows that although Tennyson did state that he believed in a "life for a life," he expressed that belief only upon questioning by the prosecutor regarding his prior written statement that he could never, under any circumstances, return a verdict which assessed the death penalty. Tennyson also indicated that he would render a decision according to the law and the evidence and would answer "no" to the special assessment questions (if he thought that was the proper answer) even if that would result in a sentence contrary to his religious teachings.

Additionally, Tennyson made several statements favorable to the defendant, including that he would require the State to produce at least two witnesses against the accused and that he interpreted "beyond a reasonable doubt" to mean "where you don't have any doubt whatsoever." Tennyson's trial counsel testified at the state habeas proceeding that, in addition to the above statements, he did

not strike Tennyson because he was involved in a missionary program. One of Burns' punishment witnesses in the sentencing phase was involved in similar work, and Burns' trial counsel felt that Tennyson might be able to identify with that witness.

When we look at all of Tennyson's voir dire testimony-- particularly in light of counsel's testimony at the habeas hearing--it is clear that Burns' trial counsel was not ineffective in failing to strike Tennyson. Reasonable jurists would not argue otherwise.

**2. Juror bias as a matter of law**

Burns next argues that the acceptance of juror Tennyson resulted in an unfair trial, since he describes Tennyson as holding an intractable belief that the death penalty is the only punishment he would consider. This claim fails for two reasons. First, trial counsel made no objection to Tennyson as a juror. As the magistrate judge correctly observed, "absent a contemporaneous objection, federal habeas corpus review of claims about the composition of jury panels is barred." See Huffman v. Wainwright, 651 F.2d 347, 349 (5th Cir. 1981). Second, the evidence indicates that Tennyson was not, in fact, biased, as discussed above. Rather, Tennyson was a person who believed that the death penalty is appropriate in murder cases, but would follow the law and evidence, and consider mitigating evidence in deciding whether to assess that punishment.

9

### 3. Improper (for cause) dismissal of a member of the venire

Relying on Witherspoon v. Illinois, 391 U.S. 510, 521-22, 88 S.Ct. 1770, 1776-77 (1968), Burns next argues that prospective juror McKay was improperly excluded from service because of her views opposing the death penalty. Although Ms. McKay did state that she was "closer to being totally against the death penalty," the record shows that she was stricken for general unsuitability rather than for anti-death penalty sentiments.

The prosecutor asked McKay whether she would be able to answer the three special assessment questions truthfully and she responded that she had not read the questions. After several confused responses, the trial court gave petitioner's counsel an opportunity to rehabilitate McKay by asking, "Would you refuse to find a person guilty even if the evidence overwhelmingly showed him to be guilty?" McKay responded, "I don't know ahead of time." When asked about the three special punishment issues again, McKay responded again that she had not read them. The trial court then gave McKay an opportunity to read the questions. After an extended period of time, the trial judge made the following comments:

> Sir, have the record reflect this venire man is over distraught just from having to answer the question or read the questions. She is obviously not capable of making a decision. The court excuses her upon challenge from the State.
> ...
> Mr. Court Reporter, you will have in your notes the amount of -- inordinate time this venire man took just sitting [here] attempting to decide how she was going to answer the question. The record shall reflect when the

10

court asked her to read the three questions she became distraught and began to cry and shake her head. Obviously not a fit person for jury service, obviously not.

A federal habeas court gives substantial deference to the trial judge's decisions on juror bias and suitability.[13] The petitioner has presented no facts or persuasive legal authority calling into question the trial judge's decision to exclude juror McKay.

### III.

For the reasons stated above, we deny Burns's motion for a certificate of appealability.

---

[13]See, e.g., Wainwright v. Witt, 469 U.S. 412, 424-26, 105 S.Ct. 844, 852-53 (1985).