UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-40524
_____


WILLIE MACK MODDEN,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Eastern District of Texas
_____
March 23, 2001

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

Petitioner Willie Mack Modden (Modden), convicted of capital

murder in Texas and sentenced to death, requests from this Court a

Certificate of Appealability (COA) pursuant to 28 U.S.C. §

2253(c)(2).  Modden's sole argument is that his counsel rendered

ineffective assistance by failing to request a psychiatrist.

---

[*]Pursuant to 5TH CIR. R.  47.5, the Court has determined that this
opinion should not be published and is not precedent except under the
limited circumstances set forth in 5TH CIR. R.  47.5.4.

Finding that Modden has not made a substantial showing of the denial of a constitutional right, we DENY the COA.

I.   FACTUAL AND PROCEDURAL HISTORY

On October 13, 1984, Modden was indicted for the capital murder of Deborah Davenport (Davenport) committed during the course of a robbery.  A jury found him guilty as charged and affirmatively answered the special issues.  Pursuant to Texas law, the trial court sentenced him to death.  On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence.  *Modden v. State,* 721 S.W.2d 859 (Tex.Crim.App.  1986), *cert. denied,* 485 U.S. 1040 (1988).  Several years later in an unpublished opinion, the Court of Criminal Appeals granted Modden state habeas relief on the claim that he was prevented from presenting and having the jury consider evidence in mitigation of the death penalty.  *Ex Parte Modden,* No. 71,312 (Tex.Crim.App.  February 12, 1992).

In 1992, Modden was retried for capital murder.  During the guilt-innocence phase of the trial, the State presented evidence that on July 29, 1984, Davenport was working the night shift by herself at a Fina gas station and convenience store in Lufkin, Texas.[1]  At approximately 1:55 a.m., a customer, David Pinkerton (Pinkerton), purchased gasoline prior to driving his evening newspaper route.  Pinkerton noticed another male customer in the

---

[1] These facts are taken (in large part verbatim) from the findings of fact made by the trial court during Modden's state habeas proceedings after an evidentiary hearing.

2

store.  At first, Pinkerton believed that the other customer was a co-worker from a previous job.

A few minutes later, Robert Ramsey (Ramsey) and his girlfriend stopped at the store and could not find a cashier.  Ramsey looked behind the counter and found Davenport lying in a pool of blood.  Ramsey immediately sought help from passing motorists, and emergency medical services were summoned.  Shortly after being transported to the hospital, Davenport died as a result of multiple stab wounds.  An autopsy revealed that she had been stabbed 17 times in the head and neck region.  She also suffered facial contusions.

Several hours later at a location known as "The Front" in Lufkin, a deputy sheriff questioned Modden but he denied any knowledge of the offense.  The investigation continued without success until a "Crimestoppers" tip was received.  On October 8, 1984, Texas Ranger Don Morris and Detective Goodwin of the Lufkin Police Department interviewed Linda McGrew (McGrew) about the murder.  McGrew gave a written statement setting forth the following information.[2]  On July 28, 1994, Modden was staying in her home as a guest of her husband Leroy McGrew.  Leroy McGrew left their home that evening with Modden and Modden's uncle, Wilt Young (Young).  The men did not return until the next morning.

Upon his return to her home, Modden informed McGrew that he

---

[2]  At Modden's trial, McGrew testified consistent with this statement.

3

"had to kill a woman a little while ago." He told her that he "had stabbed a lady," and that she begged him not to kill her because she had three children. Modden "didn't want to leave any witnesses."

George Houston, who was a friend of Modden, also testified at trial that he had seen Modden, Leroy McGrew, and Young in the early morning hours of July 29, 1984 at "the Front." Houston observed a bleeding wound on Modden's head that looked like he had been scratched. When Houston inquired regarding Modden's scratches, Modden told him that he "had stabbed a lady." Modden admitted to Houston that he had been to a service station to obtain money and had stabbed a lady fifteen times because his uncle had instructed him to do so. Modden essentially made the same remarks about the killing to Houston that he had to McGrew.

On October 8, 1984, Ranger Morris interviewed Young and he made a voluntary written statement implicating Modden in the murder. Young also testified at trial that Modden was the one who entered the station, retrieved the money, and killed Davenport.

A few days later, Modden gave a written statement confessing to the robbery but not the murder. The State introduced that confession at trial. The State also introduced portions of Modden's prior sworn testimony, including admissions by Modden of his commission of the robbery, the murder of Davenport, and how Davenport had given him a free cup of coffee just minutes before she begged him to spare her life because of her three small

4

children.

The jury found Modden guilty as charged in the indictment. At the punishment phase, the State offered evidence that on three occasions Modden previously had been convicted of felony offenses, including robbery, burglary, and theft. Various prison guards and police officers testified regarding several incidents involving Modden, including: hiding razor blades from jailers; attempting escape; cutting another inmate; and starting a fire outside his cell.

Dr. Frankie Clark, a psychologist called to testify on Modden's behalf, stated that there was a likelihood that Modden would commit future acts of violence. Additionally, defense counsel introduced into evidence an evaluation of Modden authored by Dr. Edward Brownlee, a psychiatrist. In the report, Dr. Brownlee diagnosed Modden as "suffering a mild mental retardation," the same diagnosis as the psychologists who testified at trial.

Dr. Walter Quijano, a psychologist called by the State, testified that Modden not only acted deliberately in the murder of Davenport but also would in all probability be a continuing danger to society based upon both his past and current behavior.

The jury affirmatively answered the special issues, and the trial court assessed punishment at death. The Court of Criminal Appeals affirmed this conviction and sentence in an unpublished opinion. *Modden v. State,* No. 71,493 (Tex. Crim.App. June 8,

1994), *cert. denied,* 515 U.S. 1145 (1995).

In 1997, Modden filed a state habeas application, alleging two claims for relief. After conducting an evidentiary hearing, the state habeas court entered findings of fact and conclusions of law recommending that relief be denied. On June 4, 1998, the Court of Criminal Appeals denied relief, finding that the record supported the trial court's findings of fact and conclusions of law.

Modden subsequently filed the instant federal habeas petition in district court. The district court denied Modden's petition and his request for a COA. Modden now requests a COA from this Court.

II.   ANALYSIS

A.   STANDARDS OF REVIEW

Modden filed his section 2254 application for habeas relief on September 30, 1998, which was after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His application is therefore subject to the AEDPA. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). Under the AEDPA, a petitioner must obtain a COA. 28 U.S.C. § 2253(c)(2). A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a

different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S.Ct. 3383, 3394 n.4 (1983) (citation and internal quotation marks omitted). Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997).

To determine whether a COA should be granted, we must be mindful of the deferential scheme set forth in the AEDPA. *Hill v. Johnson,* 210 F.3d 481, 484-85 (5th Cir. 2000). Pursuant to 28 U.S.C. § 2254(d), we defer to a state court's adjudication of petitioner's claims on the merits unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519-20 (2000). A state court's decision constitutes

7

an unreasonable application of clearly established federal law if it is objectively unreasonable. *Id.* at 1521.

Further, state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. Section 2254(e)(1).

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Modden contends that counsel rendered ineffective assistance by failing to request the appointment of a psychiatrist. He argues that a psychiatrist was needed to assist (1) in presenting an insanity defense at the guilt-innocence phase and (2) in developing mitigating evidence for the punishment phase. To prevail on an ineffective assistance of counsel claim, Modden must show that his counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).

1.    Guilt-innocence phase

With respect to the guilt-innocence phase, Modden cites *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087 (1985) for the proposition that whenever sanity is at issue the State must furnish a psychiatrist. We do not understand Modden to be presenting an *Ake* claim *per se.* Indeed, no request for a psychiatrist was made to the trial court. Modden argues that, in view of his purported entitlement to the assistance of a psychiatrist pursuant to *Ake,* counsel was

8

ineffective for failing to request a psychiatrist.

Sanity, however, was not an issue at Modden's trial. "*Ake* requires that the defendant, at a minimum, make allegations supported by a factual showing that the defendant's sanity is in fact at issue in the case." *Volson v. Blackburn,* 794 F.2d 173, (5th Cir. 1986). We have explained that "neither the bare assertion that the defendant was insane at the time of the offense, nor evidence of mental problems generally is sufficient to make the threshold showing required by *Ake*. Rather, the defendant, at a minimum, must make a factual showing--must present specific evidence--that his sanity at the time of the offense is truly at issue." *Williams v. Collins*, 989 F.2d 841, 845 (5th Cir. 1993).

Although Modden points to evidence indicating that he has an IQ of less than 58, he makes no factual showing with respect to his sanity. Under these circumstances, Modden has not shown that under *Ake* he would have been entitled to the appointment of a psychiatrist to assist him in developing an insanity defense. *Ake* therefore offers him no succor in his attempt to demonstrate ineffective assistance of counsel at the guilt phase. Accordingly, Modden has failed to make a substantial showing with respect to whether counsel's performance during the guilt-innocence phase constituted ineffective assistance.[3]

_____

[3] Modden cursorily asserts that counsel should have requested a psychiatrist "because the facts of the case raised issues involving voluntariness of confession, ability to understand

9

2.    Punishment phase

As previously stated, Modden also asserts that counsel rendered ineffective assistance by failing to request a psychiatrist to assist with the development of mitigating evidence at the punishment phase. Again relying on *Ake,* Modden argues that when future dangerousness becomes a factor, the State must furnish a psychiatrist. Inasmuch as we have expressly rejected this argument, Modden's reliance on *Ake* is misplaced.

In *Goodwin v. Johnson,* 132 F.3d 162, 188 (5th Cir. 1998), the petitioner argued that *Ake* compels the appointment of a psychiatrist if future dangerousness is a "significant factor." We disagreed, stating that "[i]n *Ake,* the Supreme Court held that an indigent defendant has a due process based right to the appointment of a psychiatric expert to present rebuttal evidence at sentencing `when the State presents psychiatric evidence of the defendant's future dangerousness.'" *Id.* (quoting *Ake,* 470 U.S. at 83, 105 S.Ct.

_____

*Miranda* warnings, [and] his capacity to form criminal intent." This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding. *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983). "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we [can find] no merit to these [claims]." *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992). In any event, after holding a suppression hearing regarding Modden's ability to knowingly and intelligently waive his rights and confess to the crime, the state court found that Modden's confession was voluntary. Modden has failed to rebut this factual finding with clear and convincing evidence. *See Carter v. Johnson,* 131 F.3d 452, 462 (5th Cir. 1997).

10

at 1096).

Here, the State did not put on any expert evidence, much less psychiatric evidence, regarding Modden's future dangerousness during its case-in-chief at the punishment phase. However, Modden called a psychologist to testify on his behalf during the punishment phase. In response to the testimony of the defense's psychologist, the State called a psychologist who testified in rebuttal with respect to Modden's future dangerousness.

In *Ake,* the Supreme Court:

> indicated that the due process entitlement to the assistance of a psychiatrist when the state presents psychiatric evidence of future dangerousness is predicated upon the notion that psychiatric testimony offered on behalf of the defendant is uniquely capable of uncover[ing], recogniz[ing], and tak[ing] account of . . . short-comings in predictions made by the state's psychiatrists.

*Goodwin,* 132 F.3d at 188-89 (quoting *Ake,* 470 U.S. at 83, 105 S.Ct. at 1096). Although the testifying experts at Modden's trial were psychologists, this underlying concern in *Ake* was alleviated in that Modden had his own psychologist to counter the State's psychologist. In sum, Modden has failed to show that the Supreme Court's ruling in *Ake* entitled him to the assistance of a psychiatrist with respect to the punishment hearing. Thus, his reliance on *Ake* to show that counsel was ineffective for failing to request a psychiatrist is to no avail. *Cf. White v. Johnson,* 153 F.3d 197, 208 (5th Cir. 1998) (explaining that harmlessness of *Ake*

11

error precluded finding of *Strickland* prejudice).

Without further explanation, Modden contends that trial counsel should have requested a psychiatrist because (1) the psychologist appointed on behalf of Modden "would testify that the Petitioner would commit future acts of violence" and (2) defense counsel "intended to offer into evidence a [four year-old] psychiatric evaluation report containing mitigating and aggravating circumstances."

Even assuming *arguendo* these two reasons offer some support for Modden's argument that counsel rendered deficient performance by failing to request a psychiatrist, Modden does not even attempt to show prejudice. In other words, Modden fails to articulate specifically how a psychiatrist would have assisted at the punishment stage.[4] As stated by the court below, Modden "offers nothing to demonstrate that additional assistance would have revealed some facet of petitioner that could be considered in mitigation of punishment." Likewise, this Court has opined that "without a specific, affirmative showing of what the missing

---

[4] As set forth previously, during his state habeas proceedings, Modden was granted an evidentiary hearing. During this hearing, Modden's habeas counsel questioned a psychologist that had examined Modden in connection with the original capital murder trial. At one point, habeas counsel was attempting to inquire whether a psychiatrist would have been better able to explain to a jury any sort of physiological condition of the defendant. The prosecutor objected, stating that there was no "evidence as to their being some physiological cause in regard to Mr. Modden." In response, habeas counsel stated "Judge, that's the whole point. We'll never know."

evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (internal quotation marks and citation omitted).

In conclusion, Modden has not made a substantial showing of the denial of a federal right. He therefore is not entitled to a COA on his claim of ineffective assistance of counsel.

DENIED.